## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| RUDOLPH SHAWN GAGUSKI, | : | CIVIL ACTION NO. |
| GDC ID # 1005953, | : | 2:11-CV-0306-RWS-JCF |
|     Plaintiff, | : | |
| | : | |
|   v. | : | |
| | : | |
| FANNIN COUNTY, GEORGIA, | : | PRISONER CIVIL ACTION |
| NURSE ANN EVANS, | : | 42 U.S.C. § 1983 |
| DR. MICHAEL MUMUNN, | : | |
| CAPTAIN GREG NEWMAN, | : | |
| Fannin Cnty. Det. Ctr., | : | |
|     Defendants. | : | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1983 for

(1) the Defendants' alleged deliberate indifference to his serious medical needs during

his incarceration at the Fannin County Detention Center ("FCDC" or "Detention

Center") from "July 1 to September 16, 2011, and during March 4-8 and June 8-13,

2012"; and (2) Captain Newman's alleged retaliation against him for filing this and/or

other lawsuits.  (Doc. 45 at 3).  Plaintiff sues (1) Fannin County ("FC"); (2) FCDC

Captain Greg Newman; and (3) Nurse Ann Evans and (4) Michael McMunn,[1] both

---

[1]Although Plaintiff sues a "Doctor Michael Mumunn," this Defendant, who is "an advanced practice nurse practitioner and a certified correctional health practitioner in the State of Georgia," is named Michael McMunn.  (*See* Doc. 64-1 at 2).  The Clerk is **DIRECTED** to correct the style of this case accordingly.

employees of Southern Health Partners ("SHP"), which provided medical care to FCDC inmates during the relevant time periods.  (Docs. 1, 44; *see* Docs. 38, 45).

## I. <u>Plaintiff's Complaint And Amended Complaint</u>

Plaintiff presents the following allegations in his initial complaint (Doc. 1):

> [H]e "has been diagnosed with severe Chronic Illnesses which require Medication[]s prescribed by Specialist Doctor[]s and mandating monitoring periodically and Medication[]s on a daily basis!" . . . Defendants denied him medical treatment, medication, and blood work monitoring for his chronic illnesses—mental health, hepatitis C, chronic severe pain, and bodily injuries, which include nerve damage, four pins in his left hip, and a "lost limb" on his right hand. . . . Defendants purposely put his life and health at risk of further injury. . . . [O]n August 16, 2011, Captain Newman acknowledged Plaintiff's health problems, but on August 31, [McMunn] "said he wouldn't help [Plaintiff] at all." . . . Defendants deprived him of medications, "causing further injury." . . . Nurse Evans stopped his medication on August 8, 2011, "and didn't give [him] anything else to replace what she denied [him]!"

(Doc. 38 at 3-4 (citations omitted)).  In his amended complaint (Doc. 44), Plaintiff alleges the following:

> Newman "had [Plaintiff's] medication stop[p]ed." . . . "Newman said make sure no medication an[d] threw [him] in the hole both time[s] in 2012 out of retaliation because of the lawsuit" and also for two weeks in 2011 as punishment for filing federal lawsuits. . . . Fannin County has "both <u>policy and custom</u> as they've always done inmates wrong on <u>medical treatment</u>," as demonstrated by the refusal of Fannin County officials to treat his numerous serious medical needs.

(Doc. 45 at 3 (citations omitted)).  Based on these allegations, the Court allowed

2

Plaintiff's medical deliberate indifference claims to proceed against all four Defendants and his retaliation claim to proceed against Captain Newman. (*Id.* at 4; *see* Doc. 47).

## II.   <u>Factual Background</u>

The parties have filed three motions for summary judgment: (1) Evans and McMunn ("the Medical Defendants") (Doc. 64); (2) Plaintiff (Doc. 68); and (3) Newman and Fannin County ("the FC Defendants") (Doc. 73).  Plaintiff also has filed motions for discovery and document production (Doc. 76), to appoint counsel (Doc. 77) and to summon witnesses (Doc. 78).

### A.   <u>The Medical Defendants' Statement Of Material Facts</u>

In their Statement of Undisputed Material Facts ("Med. Defs. SMF") (Doc. 64-6), which is supported by their affidavits, (Doc. 64-2 (Evans)); Doc. 64-4 (McMunn)), the Medical Defendants set forth the following facts.  At all times relevant to Plaintiff's amended complaint, Evans worked for SHP, the provider of inmate health care at the Detention Center, as the FCDC Medical Team Administrator, and McMunn, whose "correctional health certification includes mental health," worked for SHP as a Nurse Practitioner.  (Doc. 64-6 ¶¶ 2-5).  Evans treated Plaintiff on multiple occasions during the July-September 2011 and March and June 2012 time periods while Plaintiff was

3

housed at the FCDC, and McMunn did so during the 2011 time period. (*Id.* ¶¶ 7-8).

When Plaintiff was booked into the FCDC on July 1, 2011, he reported that he had prescriptions for Neurontin, Wellbutrin and Remeron. (*Id.* ¶ 9). "On July 6, 2011, the prescriptions were started and [Plaintiff] was given his prescribed medication, Neurontin and Bupropion, the generic [form] of Wellbutrin." (*Id.* ¶ 12). On August 8, it was discovered that Plaintiff, who had a "documented history of medication diversion and resale," "was not taking his Wellbutrin and instead was hiding it in his shoe." (*Id.* ¶¶ 13-14). Plaintiff's Wellbutrin was discontinued and he was referred to McMunn for evaluation. (*Id.* ¶ 15). On August 16, Plaintiff requested, via an Inmate Sick Call Slip ("ISCS"), an increase in his Neurontin dosage and a prescription for Remeron. (*Id.* ¶ 16). On August 19, after examining Plaintiff, McMunn "determined that it was medically appropriate for Wellbutrin to be discontinued from [Plaintiff's] medication, and for his dosage of Neurontin to be decreased." (*Id.* ¶ 17). Because Plaintiff "had Hepatitis C with severely elevated Liver Function Tests[,] the medications [he] felt he deserved were contraindicated due to . . . [the] potential for liver damage." (*Id.* ¶ 18).

On August 20, Plaintiff alleged in another ISCS that Evans was using his medications. (*Id.* ¶ 20). On August 29, Plaintiff filled out another ISCS, "requesting

4

a copy of his lab and doctor reports, requesting psychotropic medications, and alleging he was not receiving his medications as 'retaliation against [him] for the suit!' " (*Id.* ¶ 21).  On August 31, McMunn examined Plaintiff and found no indication of a need to change his medication.  (*Id.* ¶ 22).  Plaintiff was released in September 2011 without further incident.  (*Id.* ¶ 23).

On March 4, 2012, Plaintiff was re-booked into the FCDC, and he reported on March 5 that he had "previously been treated by Dr. Kern for brain and head injuries." (*Id.* ¶ 24).  He was given Tylenol and placed in medical observation.  (*Id.* ¶ 25).  On March 7, Plaintiff complained in an ISCS about a persistent headache since November 2011, was examined by Evans, and was transferred to the Cherokee County Adult Detention Center ("CCADC") that same day.  (*Id.* ¶¶ 26-27).  Plaintiff returned to the FCDC in June 2012 and had his intake screening on June 11; he stated that "he was supposed to see a neurologist and pain management specialist" and that he had been prescribed Neurontin, Wellbutrin, Zantac, and Tramadol.  (*Id.* ¶ 28).  Plaintiff submitted an ISCS on June 11, "complaining of pain in his head/brain," for which Evans gave him ibuprofen and referred him for a medical evaluation, but Plaintiff was released from the FCDC shortly thereafter.  (*Id.* ¶ 29).  "Throughout his incarceration, [Plaintiff] consistently filled out Inmate Sick Call Slips requesting to see the medical

5

staff regarding his medication, his diet, and receiving multi-vitamins. [He] was examined and treated each time he complained of a medical problem." (*Id.* ¶ 30).

### B.   The FC Defendants' Statement Of Material Facts

The FC Defendants offer the following additional allegedly undisputed facts. (Doc. 73-2 ("FC Defs. SMF")).  Captain Newman, the FCDC Administrator since 2006, "did not provide any directions or make any decisions about the medical care that should be provided to Plaintiff by SHP medical professionals." (*Id.* ¶¶ 1, 5).  "At some point it came to Captain Newman's attention that [Plaintiff] was not taking his medications, but instead was saving and hiding the medication." (*Id.* ¶ 7).  Although this was a violation of FCDC rules, Captain Newman left it to the SHP medical personnel to determine how best to handle this situation.  (*Id.* ¶¶ 8-11).

Fannin County does not set policy at the Detention Center, which is set instead by the Sheriff of Fannin County, "or, in the case of medical directives and protocols, by the contracted medical provider," i.e., by SHP during the relevant time frame.  (*Id.* ¶¶ 12-14).  During his incarceration at the FCDC, Plaintiff violated Detention Center rules "on multiple occasions."  (*Id.* ¶ 56).  He "was placed in disciplinary isolation" from August 30 through September 7, 2011.  (*Id.* ¶ 57).  "In June 2012, records reflect that [Plaintiff] was placed in isolation for two days because he spit in an officer's

6

face." (*Id.* ¶ 58). "Except in the limited role of officer supervision, Captain Newman was not involved in, and did not make, any decision to subject [Plaintiff] to disciplinary action." (*Id.* ¶ 59). Until Newman was served in 2014 with the complaint in this lawsuit, the "only information that [he had that Plaintiff] had filed any lawsuit was gleaned . . . from Newman's presence as a security officer for one of [Plaintiff's] court appearances" in 2012, when the conversation between Plaintiff and the judge led Newman to "conclude[] that [Plaintiff] had sued a judge." (*Id.* ¶¶ 61-62). Newman took no action based on that information, and his "actions relating to [Plaintiff], which were very limited, would have been the same regardless of any lawsuit [Plaintiff] filed." (*Id.* ¶¶ 63-64).

## C.   **Plaintiff's Summary Judgment Factual Allegations**

Plaintiff has not filed a paragraph by paragraph response to either of the foregoing statements of material fact, as LR 56.1.B.(2), NDGa. requires. Instead, Plaintiff has filed his own motion for summary judgment (Doc. 68) and a combined response to the Defendants' motions for summary judgment (Doc. 80).

In his summary judgment motion, Plaintiff alleges the following facts:

1.      he has been diagnosed with nerve damage in his neck involving "a special sense organ's nerve," requiring "<u>MITIGATING MEASURES</u>," which "means <u>Medication</u>!!! is TREATMENT" (Doc. 68 at 2);

2.   he has hepatitis C, which requires monitoring of his blood, but Nurse Evans never sent his blood to be analyzed "because of being lost suppos[e]dly" (*id.*);

3.   he has 4 pins in his left hip, requiring medication (*id.*);

4.   he "has lost [a] limb on [his] Right hand [sic]" (*id.*);

5.   he received a "<u>BRAIN INJURY</u>" shortly before his 2012 FCDC incarcerations as a result of being attacked with baseball bats, and the Defendants knew this but still denied him his "LIFE SUSTAINING MEDS," to wit, Keppra for seizures and Percocet 10s eight times a day (*id.* at 3-4);

6.   he was denied medical treatment because he had no insurance (*id.* at 4);

7.   "Capt. Newman said make sure no medication an[d] threw the Plaintiff in the HOLE both time[s] in 2012 out of RETALIATION BECAUSE OF THE LAWSUIT" (*id.* at 4-5);

8.   Newman "also put Plaintiff in the hole between July 2011 to Sept. 2011 for 2 weeks for punishment because of the federal law suit[] and was mad because the feds were calling him to see what was happening because they were retaliating against Plaintiff[,] and Capt. Newman told Plaintiff he needed to stop writing the District Court" (*id.* at 5-6);

9.   the fact that other FCDC inmates, J.D. Long and Chris Messer, also sued these Defendants for deliberate indifference to their serious medical needs "proves they've done this time an[d] time again" (*id.* at 6-7); and

10.  he has been harassed with false criminal charges, other legal difficulties and false newspaper reports because of the various lawsuits he has filed in federal district court against Fannin County defendants (*id.* at 7-8).

In his response to the Defendants' summary judgment motions, Plaintiff objects that Defendants have filed medical records from Cherokee County "to make it appear"

8

that Fannin County personnel provided him with more medical care than they did. (Doc. 80 at 1). Plaintiff states that Evans and McMunn cannot override the treatment plans of his treating physicians, Dr. Kern, a neurologist, and Dr. Brent Davis, an orthopedist. (*Id.* at 2). Plaintiff notes that Defendants "have filed all the medical records <u>for the Court to see</u>" from the orthopedist and neurologist who treated him. (*Id.*).

Plaintiff also alleges that he has a claim under the Americans With Disabilities Act because he is disabled due to neurological and special-sense-organ nerve damage, which is why he requires the assistance of an attorney. (*Id.* at 3; *see* Doc. 77 at 1). Plaintiff requests that the witnesses he has asked for be summoned and states that he "also needs the discovery documents asked for." (Doc. 80 at 3; *see* Docs. 76, 78). In his motion to summon witnesses, Plaintiff asks the Court "to summon J.D. Long and Chris Messer," who know that McMunn denied all three of them their necessary medications; heard McMunn "**<u>YELL</u>** at Plaintiff" and tell him he was not getting any more medication; and observed Evans and McMunn deny Plaintiff the "medication for his nerve damage and mental health needs." (Doc. 78 at 1). In his motion for discovery and document production, Plaintiff asks that Defendants be ordered to name all FCDC inmates who were taken to the hospital or released on their own

9

recognizance between 2000 and the present because "these inmates were made to pay their own medical expenses because Fannin [County] policy under Greg Newman was to **NOT** pay."  (Doc. 76 at 1).

### III.   Summary Judgment Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[Former] Rule 56(c) [now Rule 56(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted).  And "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

10

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

The movant bears the initial burden of demonstrating that summary judgment is warranted. *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant may do so by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has properly supported the summary judgment motion, the non-movant then must "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in the non-movant's favor. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*" (emphasis added)). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

11

## IV.   <u>Discussion</u>

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived her of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).[2]

### A.   <u>Deliberate Indifference To A Serious Medical Need</u>

"To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. Appx. 456, 458 (11th Cir. 2010) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)); *see also Goss*, 2010 U.S. Dist. LEXIS 144106, at *4 ("plaintiff must demonstrate (1) an objectively serious medical

---

[2]Plaintiff alleges that he was a pre-trial detainee during the relevant time periods.  (*See* Doc. 80 at 1-2).  If he was, his claims are properly brought under the Fourteenth rather than the Eighth Amendment, although the medical deliberate indifference standards are the same under both amendments.  *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005) (explaining that for pre-trial detainees "the Eighth Amendment prohibitions against cruel and unusual punishment do not apply," but pre-trial detainees "have a Fourteenth Amendment due process right to receive medical treatment for injuries and illness" (internal quotations omitted)); *see also Goss v. Paxton*, No. 2:10-CV-0178, 2010 U.S. Dist. LEXIS 144106, at *4 (N.D. Ga. Nov. 9, 2010) ("Deliberate indifference to the serious medical needs of an inmate or pre-trial detainee violates the Eighth and Fourteenth Amendments, and the standard is the same under both amendments." (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001)).

12

need that, left unattended, poses a substantial risk of serious harm, and (2) 'that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law' " (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000))). " '[N]ot every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation.' " *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999)).

### 1.   Serious Medical Need

Plaintiff must first show that he had an objectively serious medical need. "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted).  The Medical Defendants do not dispute that Plaintiff suffered from a serious medical need while confined at the FCDC during the relevant time periods, although the FC Defendants argue that "[m]edical records reflect that Plaintiff did not suffer from a 'serious medical need' at any time relevant to this case." (Doc. 73-3 at 10).  Even assuming that Plaintiff has identified a serious medical need,

13

however, he has failed to demonstrate deliberate indifference to any such need, as explained below.

### 2.   **Deliberate Indifference**

Plaintiff must show deliberate indifference to his serious medical needs by showing " '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.' " *McDaniels*, 405 Fed. Appx. at 458 (quoting *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "With respect to the 'subjective knowledge' component, [the Eleventh Circuit has] stated that defendants 'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* must also draw the inference.' " *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.' " *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

After showing a defendant's subjective awareness of a substantial risk of harm,

14

a plaintiff must also show that the defendant "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  But even where there was a delay in medical care, a plaintiff must show that the defendant's action or inaction constituted more than negligence or even medical malpractice.  *See Nimmons v. Aviles*, 409 Fed. Appx. 295, 297 (11th Cir. 2011).  Courts should consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay."  *Goebert*, 510 F.3d at 1327.

> Delay in providing "diagnostic care and medical treatment known to be necessary" can qualify as deliberate indifference. *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out."). That delay, however, must be "tantamount to unnecessary and wanton infliction of pain," and [the Eleventh Circuit] *require[s] an inmate who alleges a delay-based Eighth Amendment claim to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994) (quotation marks omitted), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

*Simmons v. Monserrate*, 489 Fed. Appx. 404, 406-07 (11th Cir. 2012) (emphasis added) (affirming grant of summary judgment to defendants on plaintiff's deliberate indifference claim in part because, "importantly, [plaintiff] has not proffered any 'verifying medical evidence' to establish the detrimental effect of a delay in medical

15

treatment").

Here also, Plaintiff has failed to proffer any verifying medical evidence. He points to the medical records filed by the Medical Defendants as evidence that their treatment of him constituted deliberate indifference to his serious medical needs, but a close inspection of those records reveals otherwise. After Plaintiff was confined at the FCDC starting on July 1, 2011, he wrote a series of ISCS, or Medical Requests, dated July 1, 2, 4 and 6, asking for his prescribed medications (Doc. 70 at 17-19, 21) — 600 mg of Neurontin, twice daily; 200 mg of Wellbutrin, also twice daily; and an unspecified dosage of Remeron (*id.* at 18). On July 6, Plaintiff was started on these medications, except for the Remeron; although he was given the generic form of Wellbutrin, known as Bupropion. (*See id.* at 9; *see also* Med. Defs. SMF ¶ 12).

Plaintiff continued to receive these medications until, according to the Medical Defendants, it came to their attention that Plaintiff was hoarding his Bupropion, which was discontinued on August 8. On August 19, Plaintiff's Neurontin dosage was reduced from 600 to 300 mg, twice daily, and on August 27 it was reduced again to 300 mg, once daily, and then discontinued altogether on September 3. (*See id.* ¶¶ 13-18; Doc. 70 at 5-6). Plaintiff filed at least three Medical Requests about these changes in his medications, on August 16, 20, and 29. (Doc. 70 at 12-14). On August 16, he

16

requested an increase in Neurontin to 900 mg, twice daily, because he was no longer receiving his Wellbutrin, and he also requested a prescription for Remeron, which he claimed that his psychiatrist had said he needed to help him rest.  (*Id.* at 14).  On August 20, he asserted that his orthopedic and psychiatric records would substantiate his need for the medications he had requested — 600 mg of Neurontin, twice daily; 200 mg of Wellbutrin, twice daily; and 30 mg of Remeron.  (*Id.* at 13).  On August 29, he requested the laboratory reports for his blood work and again requested his psychotropic medications.  (*Id.* at 12).  McMunn made the medical determination that the medications that Plaintiff was seeking were contraindicated by his hepatitis.  (Med. Defs. SMF ¶¶ 17-18).  Plaintiff has offered no medical evidence to dispute this conclusion.  Nor does Plaintiff dispute that he was hoarding his medications rather than taking them as prescribed.[3]

---

[3]And in any event a mere disagreement over a course of treatment does not rise to the level of deliberate indifference.  As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim.  *See Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991); *see also Harris v. Leder*, 519 Fed. Appx. 590, 595 (11th Cir. 2013) (" 'Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.' " (quoting *Thigpen*, 941 F.2d at 1504)); *Adams v. Poag*, 61 F.3d 1537, 1547 (11th Cir. 1995) (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").  Plaintiff's allegations regarding the medications that he received while at the FCDC in 2011 appear to be nothing more than a disagreement over a course of treatment that was otherwise minimally adequate, and thus these allegations do not create a genuine issue of material fact for trial.  And the Medical Defendants' undisputed assertion that Plaintiff was hoarding his medication, rather

17

In November 2011, while free from confinement, Plaintiff was assaulted and hit in the head and the right lower ribs with a baseball bat.  Other than a non-displaced skull fracture, it appears that he suffered no major injury during this assault, as determined by the physician who examined him at the hospital and by Dr. Kern, whom Plaintiff claims as his treating physician.  (*See* Doc. 70-8 at 21-22, 28).  On December 7, 2011, a computed tomography ("CT") scan was performed on Plaintiff's head. (Doc. 70-9 at 17).   The findings were as follows:

> Unenhanced head CT scans dated 12/07/11, reviewed with those of 11/29/11 and 11/22/11 show complete resolution of a previously reported tiny left parietal epidural hematoma. *The brain, ventricular system, and other intracranial areas all look normal.*  There is a tiny residual bit of thickening in the left parietal scalp where hematoma was noted previously.  A non-displaced left parietal skull fracture again noted.

(*Id.* (emphasis added)).  On January 27, 2012, Plaintiff received a prescription for Percocet 10 mg for his complaint of chronic headache.  (*Id.* at 6-8).

At Plaintiff's intake screening at the FCDC on March 5, 2012, he reported hemorrhaging in his brain.  (*Id.* at 42).  He completed a Medical Request form on March 7, complaining that his head had been hurting since November 9, 2011 and

---

than taking it daily as prescribed, also mitigates strongly against the need for a trial on the issue of whether Plaintiff's failure to receive a different regimen of medications during his July 1 to September 16, 2011 detention at the FCDC constituted deliberate indifference to his serious medical needs.

18

referring the FCDC staff to Dr. Kern, whom he had last seen on January 12, 2012. (*Id.* at 1). Plaintiff remained at the FCDC until his transfer to the CCADC on March 7 or 8, where he reported that he had been taking oxycodone five times daily for pain and Keppra once daily for seizures, and although he had not had a seizure, he took Keppra "because they think [he] might." He also claimed that he had received no medications while at the FCDC, including no "medication for detoxing off oxycodone." (Doc. 70-7 at 53). The FCDC reported to the CCADC that Plaintiff had been booked in on March 4 and had left on March 7, during which time he had been started on Tylenol and placed in medical observation. (Doc. 70-8 at 10). On March 27, 2012, a CT scan of Plaintiff's brain showed "[n]o acute intracranial hemorrhage" and "[n]o significant abnormality of the brain parenchyma as demonstrated." (Doc. 70-7 at 28). On June 11, 2012, Plaintiff completed a Medical Request indicating that he has a "head/brain" injury that "hurts all the time"; a fractured arm; and a severed nerve. (Doc. 70-7 at 22).

Again, other than the medical evidence provided by the Medical Defendants, which indicates that Plaintiff did not suffer from these ailments, except perhaps for a persistent headache, there is no verifying medical evidence in the record indicating that Plaintiff suffers from any serious medical need as a result of the November 2011 assault. There is certainly no evidence of a fractured arm, a lost limb on his right hand,

19

a brain injury, four pins in his hip, or any other medical condition for which Plaintiff claims he received constitutionally inadequate care while at the FCDC.  (*See* Doc. 68 at 2-3; Doc. 70-7 at 22).

In sum, because Plaintiff has placed no verifying medical evidence in the record to support his claims, some of which concern a mere disagreement over his course of treatment while at the FCDC, and the remainder of which do no reflect the wanton disregard necessary to establish deliberate indifference during his brief confinement at the FCDC in March and June 2012, there is no genuine issue of material fact as to whether anyone at the FCDC was deliberately indifferent to Plaintiff's serious medical needs.  All Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claims.

### 3.   <u>Causation</u>

Finally, to prevail here Plaintiff must not only show deliberate indifference to his serious medical needs but also show that the alleged indifference caused him injury.  *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "To survive summary judgment, a plaintiff must show that the delay attributable to the defendant's [alleged] indifference likely caused the plaintiff's injury" and, as noted above, "*must place verifying medical evidence in the record to establish the detrimental effect of*

*delay in medical treatment to succeed.*"  *Lee*, 405 Fed. Appx. at 458-59 (emphasis added) (citing *Goebert*, 510 F.3d at 1329; *Hill*, 40 F.3d at 1188).  Once again, Plaintiff has failed to meet his burden on the issue of causation with respect to his deliberate indifference claims.

### B.    Retaliation

"A prisoner may establish a First Amendment retaliation claim by showing that prison officials retaliated against him for exercising his right to free speech." *Stallworth v. Tyson*, 578 Fed. Appx. 948, 950 (11th Cir. 2014) (citing *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)).

> To prevail, the prisoner must establish that: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech."

*Id.* (citing *O'Bryant*, 637 F.3d at 1212).  "To meet the third element, a prisoner bears the burden of showing that his protected speech was a motivating factor behind the actions taken by prison officials."  *Id.* at 951 (citing *O'Bryant*, 637 F.3d at 1217). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights. *Id.* (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

21

Here, Plaintiff alleges, with no factual support, that Captain Newman placed him in administrative confinement in 2011 and twice in 2012 as retaliation for Plaintiff's filing this and other lawsuits against Fannin County, the FCDC and/or FCDC personnel. (Doc. 68 at 4-6; *see* Doc. 45 at 3). Newman denies any involvement in the decisions to place Plaintiff into administrative confinement and also denies learning about this lawsuit until he was served with Plaintiff's complaint sometime after February 2014, although he did learn in 2012 that Plaintiff may have sued a Fannin County judge. (Doc. 73-1 ¶¶ 8-9). It is troubling that Newman has only referred to "jail records" to support his assertions, rather than supplying those records to the Court. While Newman relies on his personal experience for the assertions in his declaration, which are presented under penalty of perjury (*see id.* at 5), Plaintiff also apparently relies on his personal experience to assert that Newman "was mad" at Plaintiff because "the FED's [sic] were calling him to see what was happening" and Newman told Plaintiff "to stop writing the Court!"; and Plaintiff's assertions are also presented under penalty of perjury in his amended complaint (*see* Doc. 44 at 7-8). *See also Stallworth*, 578 Fed. Appx. at 950 ("The factual assertions that [plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because he verified his complaint with an unsworn written declaration, made under

22

penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

A party seeking summary judgment nevertheless may demonstrate that summary judgment is warranted by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. It is noteworthy in this regard that although Plaintiff has filed numerous complaints in this Court, the bulk of those complaints were filed *after* Plaintiff left the FCDC in June 2012. *See, e.g., Gaguski v. Gaskin*, 1:12-cv-2251-ODE (N.D. Ga. May 16, 2014) (filed June 28, 2012 against Dr. Gaskin of the CCADC's medical staff); *see also Gaguski v. Kirby*, 2:13-cv-44-RWS (N.D. Ga. Apr. 2, 2014) (filed March 8, 2013 against Fannin County Sheriff Dane Kirby, Captain Newman, *et al.*); *Gaguski v. Garrison*, 1:12-cv-3796-RWS (N.D. Ga. Nov. 16, 2012), Doc. 2 ("In June 2012, Plaintiff filed a civil rights complaint against various Defendants at the . . . CCADC regarding his treatment there. *See Gaguski v. Gaskin*, 1:12-CV-02251-ODE-JFK (docketed June 28, 2012). In October 2012, Plaintiff filed two additional civil rights complaints regarding his treatment at the CCADC, docketed as the two cases listed in the style of this Order. *Gaguski v. Gaskin*, 1:12-CV-03795-RWS-JCF, Doc. 1; *Gaguski v. Garrison*, 1:12-CV-03796-RWS-JCF, Doc. 1.").

23

Before June 13, 2012, when Plaintiff was released from the FCDC for the last time that is relevant here, the only complaint that he filed naming Captain Newman as a defendant is the complaint in this case.  But that complaint was docketed on November 7, 2011, after Plaintiff had been released from the FCDC on September 16, 2011, and was not served on Captain Newman until April 2014 (*see* Doc. 52), long after Plaintiff's two brief detentions at the FCDC in March and June 2012.

In short, there is no genuine issue of fact regarding an alleged causal connection between Plaintiff's filing a lawsuit against Captain Newman in November 2011, which was not served on Captain Newman until April 2014, and Plaintiff's being placed in administrative detention at the FCDC in July through September 2011 and in March and/or June 2012.  Captain Newman is entitled to summary judgment on Plaintiff's retaliation claim, and therefore Plaintiff's claims against all Defendants are due to be dismissed.

## V.   <u>Conclusion</u>

Because Plaintiff has not demonstrated the existence of a triable issue of material fact with regard to his deliberate indifference and retaliation claims, those claims should be dismissed as a matter of law.  *See Bailey*, 284 F.3d at 1243; *Chanel, Inc.*, 931 F.2d 1477.  **IT IS THEREFORE RECOMMENDED** that the summary

24

AO 72A
(Rev.8/82)

judgment motions filed by Defendants Michael McMunn and Ann Evans (Doc. 64) and by Defendants Greg Newman and Fannin County, Georgia (Doc. 73) be **GRANTED**; that Plaintiff's motions for summary judgment (Doc. 68), for discovery and document production (Doc. 76), for appointment of counsel (Doc. 77), and to summon witnesses (Doc. 78) be **DENIED**; and that this civil action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 6th day of January, 2015.

 /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

AO 72A
(Rev.8/82)